Council, I just want to ask you, before we start this case, whether it's your understanding that the courtroom should be sealed, as well as, I mean, all the records are sealed, we're prepared, we have the court staff prepared to seal the courtroom as well, and to not record the oral argument, if council thinks that's appropriate. We talked about it beforehand, and we decided that if the court can continue to use the pseudonym only, it doesn't need to be sealed, and we don't anticipate getting into any particulars about the cooperation, we will simply need to talk about cooperation as a kind of abstract matter. Right. Well, I think that makes sense from the standpoint, because just otherwise, if parties just always stipulate to seal, that really doesn't address the, you know, having the public to have access to a courtroom, and so, and it, but I think if at some point it became necessary to either of your arguments, we would want you to have that opportunity. To me, it, I'm not really sure at this point, I don't, I'm seeing law clerks, but I'm not sure anyone else has left, but It is being recorded, and it's also being, it's on YouTube, so, right, it's being streamed live, YouTube, so, I'm, it's just, we can proceed and just proceed with caution, and just then alert us if we're getting into something that's sealed. Through the history of the litigation in this case, we've never had to refer to any specifics. Okay, great. It seems to be a legal issue. Yes, correct. And it unusually seems to be a legal issue where there's more agreement than disagreement. It is an unusual possibility. Cory, from your, from the party's perspective. Correct. May I please report, James Fife of Federal Defenders, appearing for the appellant. First off, I do want to apologize to the court for the late filing of the response to the OSC. I had that prepared and ready to be filed two weeks in advance of the deadline, and it just simply fell through the cracks, and I apologize to the court, but I think we've been able to accommodate that. Now, Your Honor, as you pointed out, on the merits, the parties here agree. They're both arguing that Section 1B.1.10 is expressly framed to favor cooperating defendants in retroactive resentencings. It's undisputed that time and again, the Sentencing Commission has acted on the congressional directive to incentivize cooperation by defendants using exceptional concessions built into the guideline. So there's already a split between the circuits, right? On this issue? Yeah. So there's a split between the Sixth and the Seventh or something? Right. The court has, I know, there's been references to the Taylor case. We might be creating a little deeper split, but not, and I don't think either of those cases the Supreme Court granted cert either. No, and Your Honor, I would disagree that there's actually technically a split on this side, because there's one point of disagreement we have with the government is that I do not contend that variances are included in this, because by the very fact of the statute allows resentencing only when there's been a change in the guideline. A variance, by definition, has nothing to do with the calculation of the guideline. Right, but you have the Phelps case on your side from the Seventh Circuit. I know, Your Honor. That is quite awkward. I mean, that's where I sit, so it was the first thought that came to my mind. Let me ask you some specifics. It's not an 11C1C agreement. It's an 11C1B, and the agreement that I'm looking at says that there may be guideline departures that are not referenced within the plea agreement, right? The retroactivity of the amendment was, we know that it has to go back in time. So now we're in the land where, assuming we were to apply the one side of the split, the Phelps side, your client's out of jail, right? Yes. So then, if it were to go back and the guidelines were reduced based upon the retroactivity of the amendment, now all he is left with is he's in his supervised release period. So is it your contention, then, that we should do that, in that the judge should have the ability to decide whether or not this, the five-year, he gave five years of supervised release, should also be reduced now that the retroactivity, at least take it into account. Is that your position? Yes, that's correct, Your Honor. I would make two points about that. One, in this court's case, Figaro-Ocampo has recognized that having supervised release, once the person's been released from prison, having a term of supervised release that's not discharged keeps the case from becoming officially moot. There's still a case in controversy because even a sentence reduction can have a reflection on whether the court will grant any kind of change to the supervised release term. And the original 5K departure departed and specifically stated four statutory minimums. So the fact that the five-year supervised release is statutory wouldn't matter if that was what the original departure held, right? That would be my contention as well, Your Honor, is that it covers that as well. And I would point out that Application Note 7 to 1B1.10 specifically contemplates this sort of situation, that people will get retroactive reductions perhaps years after they've been sentenced and their custody will be up, but those people shouldn't be left out in the cold. Well, but now, if the supervised release were up here, would the government have a better argue on mootness? I don't think so, Your Honor. I think the question is the predicate... Do you think so forever? People can just keep coming back? For on their... Well, if you are completely done with this sentence. Oh, if you're completely done. No, no, no. I agree with Your Honor. If there's nothing, yes. Something's got to end somewhere. So if he's not under any kind of court sanctions or, yeah, some restraint of his liberty, then yes, that's absolutely true. But it's the case that he's only just recently embarked on his supervised release term. But that's actually one of the points of prejudice in this case, is that if everything had gone and he's argued and as both parties agree and agree from the beginning should have gone, he should have had his sentence lowered back in June of last year, in which case he would have been out already. He would have completed nearly the first full year of his supervised release. Now, if it wasn't 11C1C, you might have a different argument, right? That's right, Your Honor. I mean, our understanding is, in a case like that, that that's not based on the guideline and therefore he's not eligible for reduction. So even though he would get the retroactivity, he had agreed to that sentence under 11C1C? That's right, Your Honor. I should explain that. I was in charge of doing, for all of the Southern District, the drugs minus two cases for three years and we did about 1,300 cases and about 800 of them went through to litigation. And we had exactly one case of a 11C1C. And we advised that person that we can't even advocate for you because we believe that you're not eligible. But there's just one. It's just not a common type of plea in our district. And the judge still has the ability to reject it, right? He has to consider it. And then he applies, so he considers the new guideline range? Yes. And then he says, under the new guideline range, what would my sentence be under the 3553 factor? That's correct, Your Honor. In fact, Judge Moskowitz here, I mean, just a few days before, I had been in his courtroom arguing this same legal issue. But there, Judge Moskowitz said, well, you know, I disagree with you on the law, but even if I had the discretion to lower his sentence in this guy's case, I wouldn't lower his sentence. I would give him the same time. This is not what he said about this appellant. He said it seemed pretty clear that he would consider it. And after all, what we're talking about here is six months. The average reduction in the Southern District of California was about 10 months. So it's not even an average reduction. Whereas we were having some people on joint petitions, a five and six years reduction in their sentences. So this is a small amount. What do you think caused Judge Moskowitz to go the other way on this case? I'm not sure, Your Honor. I mean, Judge Moskowitz is an extremely thorough judge. And I think that he asked for briefing. He wanted to make sure that the government that was really committed to that we're going to be on the both sides of this, both on the same side. I think when he went back and looked at the case law, he looked at the Ornelas case, which I believe that he's misapplied here. And I explained that to him. You can see in the record here that I did say, well, I don't think Ornelas is apposite. And he agreed. It's like, OK, this is not a substantial assistance case, so it is different. What surprised me most is that he seemed very much attuned to the idea that the rule of lenity at least would apply in a situation where you have such conflicting interpretations of the statute. And then he said there was no ambiguity at all in the statute. I think the very fact that a case like Phelps exists and indicates that, yes, there are different ways of interpreting the statute, at least that there's a reasonable mind and that the end of the line is... It's not easy. It wasn't easy. It's not easy. It's not the best written. But I think that it is... The indications are there. The language is not technical. The exception uses broad language. It says term of imprisonment imposed, when it could have easily said the guideline range computed at the time of the sentence. In fact, later on in the same sentence, the commission uses a term of art, amended guideline range. That's a term of art in this guideline. And it uses that in the same sentence and counterposes that with broad terms like term of imprisonment imposed and comparably lower. These are very broad, loose terms. I think that's the signal that the commission intended to look at the whole sentence as the government said in the brief. The ratio, the reduction, the amount of reduction that's allowed is the ratio between the whole sentence that's imposed as opposed to the original guideline. So that you're looking at the whole sentence, not simply the part that is derived from the substantial assistance, which would have been a very easy thing for the commission to do if they meant that. But they deliberately chose some broad terms. And I think that's... I think not only the language of the guideline indicates that, but I would point out also, really importantly, the history. And I want to emphasize Amendment 780, because I think this one really shows where the commission is coming from. This was the case that put the exception to 5G 1.1 into the guideline, that allows it to go past the trumping of the mandatory minimum. That's a huge benefit. Judge Moskowitz in another case describes this. That's a huge windfall for these people. And we had to agree that that is definitely true, but it's consistent with the view of treating co-operators as favorite class. In this case, the government, the commission, had several circuits that applied the trumping. They went with the minority, with the two circuits that didn't. And those two circuits had different reasons for doing it. One of them just simply applied the rule of lenity. The other one said, no, it's implicit within the purpose and understanding and the meaning of this statute that you don't apply the trumping. There was no explicit language whatsoever in the guideline at the time, but then the commission adopted the reading of what the court was saying was implicit in their meaning. And what's really important for this case is that's a clear example where some courts were denying certain co-operators any reduction whatsoever. And the commission said, no, that's not what we want. We don't want co-operators to be disadvantaged in an unfair way like this. That's exactly what's happening here. Those who cooperate but also render the institutional benefit of fast track, they are automatically excluded. They're barred by another law. You might not want to snatch the feet out of the jaws of victory. I'm just thinking, where's the sense in that? Why do co-operators, whether it's fast track or some other. Did you hear what I said? No. Maybe I have to say it. You can say too much sometimes. You're over. Okay. I'll leave it at that. Thank you. Unless there's some other questions. Good morning, and may it please the Court. Helen Hong on behalf of the United States. I just want to focus on the one area where we principally diverge, and that's whether there's a ripe case in controversy for this court to consider. We disagree and believe that this case is entirely moot, and that cases like Figueroa        And that's why we're here. And that's why we're here. And that's why we're here. I think the whole point of this is an appeal from a 3582 proceeding. So 3582 has to do with terms of imprisonment alone. There's a separate section, 3583, that deals with... But he could still be violated on the supervised release, right? So if the Court were to accept the stipulated interpretation here, and he went back and the Court said, you know, the Court could then look at it and say, if I would have given you what 51 months, and then you would have been out at such and such a time. And so then I'm going to shorten your supervised release, and therefore it... And which would be meaningful to someone if, say, at four years and one day, they committed a new crime, as opposed to at five, you know, so... And that would be the case in an ordinary sentencing proceeding where the sentence is vacated. So if someone is no longer in custody but still serving a period of supervised release, once the sentence is vacated, the district court then is free to determine whether a different term of supervised release would have been imposed. But that's not what we have here. But he could also, Judge Moskowitz could also deem that final six months in prison as having served six months of supervised release, because basically he was still being held, and so it would be supervised release not on the terms of supervised release, but still it would be six months less. In Johnson v. United States, it's a Supreme Court case that says you can't do that, that the term of supervised release begins the moment the defendant is released. But again, under 3582 proceedings, the district court doesn't have... But is the court required to give supervised release? Is the court required to give... The court is not allowed to touch supervised release in a 3582 proceeding. So a 3582 C2 proceeding is only about the term of imprisonment. And so the district court in this case could only have reduced the term of imprisonment for the defendant. Okay. So two questions. When did he originally file? Was he still incarcerated then? He was. So he filed in April of 2016. So approximately one and a half years after these amendments went into place, the defendant filed seeking a joint request for a reduction to 51 months. The district court considered it and issued its decision in June, stating that it could not give the defendant the relief that he sought. Since then, this defendant has been released and was released in December of 2016. As a result, the district court has no power to do anything, even if this court were released in the end. Because under 3582, the only thing that the district court can touch is the term of imprisonment. And that's why... What about section 3583E1, where he could move to terminate his five-year term of supervised release in the interest of justice early? And that's not something that the defendant cannot do. He is free to do that in December of 2017, to file the 3583E proceeding to terminate his period of supervised release or to modify it in some way. But that's a separate proceeding that the defendant needs to pursue. The eligibility for a reduction here is not a triggering condition. It's not a condition precedent to the reduction of supervised relief. And that's made clear in Note 7 of 1B1.10. I don't know if, I mean, I have to look at this more closely, but it doesn't, it seems like if you could accomplish the same thing at the same time, it's just more efficient as a judicial matter. And, but there's a, 1B1.10 contemplates that the existence or the eligibility for a reduction is not at all dispositive. So the guidelines actually say that it's not a condition precedent or a triggering prerequisite to the termination of supervised release. The notes say that the fact that the defendant may have served a longer term of imprisonment than the court determines would have been appropriate in view of the amended guideline range determined under subsection B1 shall not, without more, provide a basis for early termination of supervised release. So the district court is required in a 3583 proceeding to consider a host of other issues. For example, has the defendant complied since he was released? Are there reasons why supervision may still help someone like this defendant who's had drug problems that led to the relapse and the subsequent conviction? See, what's odd is at least in the Seventh Circuit, when you're looking at the length of a supervised release, the court encourages it not to be such a severed concept, but that you might consider, for example, even a longer term of an imprisonment and a shorter period of supervised release so that you couldn't really sever them in the analysis. And I don't think that's different from the Ninth Circuit rule, and that's what Figueroa Campo recognizes in the ordinary sentencing context. Except for here. But here we're dealing not with ordinary sentencing, but the retroactive applications of a guideline under 3582C2, which only permits the district court to reduce the term of imprisonment. And because the statute is clear, the guidelines track that statute, and this court's case law also tracks that. The United States police law. I don't think we have clear precedent on that, on your question. Yes. There are unpublished cases and we cited them in our 28J letter. But we believe that the 28 or the unpublished cases track what the statute requires. And in this case. It seems like that would be something that we have to remand this case. Anyway, it would be something that Judge Moskovich should consider in the first instance. This is all sort of new. And it's just our position that the court can't even reach the merits at this point because there's no live case or controversy. That seems really unjust. So anyway, I'm just saying you're asking us to do something that seems, you know, if we were to decide that he was entitled for consideration, it would seem unjust not to have it reconsidered. And we would just note this is a 3582 limited non-plenary proceeding, but understood, Your Honor. Okay. I'm not sure how she answers that way. Okay. You're asking us to do something different. So I guess you're kind of looking bigger picture, obviously, in your interpretation. And so there would be, I mean, because you obviously on the legal issue that was something that's going to recur, you're in agreement on. But in terms of if we accept your position on this, that would mean that there would be other people that there would be more moot cases? Not really in the Southern District, at least. My understanding is there's only one other case, and that's the, there's a case that's identified in our briefing. I'm not going to state the name because it's under seal, but there's another related, not related, there's a case that was noticed that has the same issues, but we actually don't think there are similar issues because that defendant had a guidelines range that was So there are arguments that his sentence was not actually based on the sentencing guidelines. These are the only two cases I'm aware of that involve this blended mixed departure issue. So there aren't going to be a number of defendants that are left in the lurch because this issue is rendered moot. Well, most of them are going to still be in custody, too. As Mr. Fife acknowledged, I think he and the team from the U.S. Attorney's Office have marched through 800 or so cases that have all been decided already. Right. These are the only two where there are potential appeals. Interesting. Judge Callahan and I are both on the Defender Committee, and I guess it's fair to ask if all the other districts done this type of approach? Yes, I think so. I will leave that to Mr. Fife. I know the two attorneys that have handled it in our office worked with the Federal Defender's Office to identify the cases that were subject to the 3582 proceedings and then came up with a procedure for the district courts. I don't know what other districts have been doing. Thank you. Thank you, Your Honor. Thank you very much. Ms. Hong. You can answer that question, and then, I mean, do you have a response on the moot issue? Yes, just two points on that. In fact, this is a, we early on set up a system. We received a training to get our ducks in a row at the beginning. We went directly to the U.S. Attorney's Office and we know there's going to be a lot of cases that we agree on. Let's just get a nice streamlined procedure. We put it together, took it to Chief Judge, and they put it through as a general order, and then we followed the general order procedure. Is that across the circuit? It's for the entire southern district. I mean, other districts came up with their own plans. But they did vote to be commended for that. We thought it was the most efficient way to have Federal Defenders serve as the district-wide clearing house so that everything would be through us. We would make our recommendations to the U.S. Attorney and they would agree or disagree and we would take it from there. Very efficient. Very well done. Your Honor, about the mootness issue, I would say that this isn't moot simply because under Figaro Acampo there is, when there is an undischarged term of supervised release, the case has a case in controversy here. I think the closest thing that this could be related to is ripeness. And ripeness, the Supreme Court said, is a combination of two factors, fitness for judicial decision and hardship. This is obviously fit for a judicial decision.  It's ready to go. We can decide it right here. What about the exact word imprisonment that's in the guideline there? The exact word that says that it doesn't apply unless, except to imprisonment. It reduces his term of imprisonment. That's the trigger. It does reduce his term of imprisonment. And the fact that there is also another provision in the guideline that says, well, you can't get a sentence lower than the actual time served, that's kind of a secondary thing. But I think that's exactly what the Commission is getting at with Application 07 is that, well, we have to make some provision for people that sometimes we don't get around to making these retroactive amendments until some people have been prejudiced by it. So we're going to give them some sort of basis. And so that's exactly what that note is for. I would say the court has to decide this now, not simply because of this case, but as these retroactive amendments work, the case law develops on this at the back end of it. It's only once a lot of problems have arisen in how to apply the retroactive amendment that we get the case law developing on this. I think here, the court needs to decide this now, not just for this case, but for the future. The next time a retroactive amendment comes up, the case law will be in place, the courts will have guidance, and we'll know what to do. All right. Thank you very much, counsel. Thank you. U.S. v. D.M. is
judges: Wardlaw, Callahan, Kendall